IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 9, 2008

**KENNETH WILLIAMS v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 04-02649    John P. Colton, Jr., Judge**

—————

**No. W2007-01876-CCA-R3-PC - Filed December 1, 2008**

—————

The petitioner, Kenneth Williams, pled guilty in the Shelby County Criminal Court to second degree murder and received a sentence of thirty years incarceration in the Tennessee Department of Correction. Thereafter, he filed a petition for post-conviction relief. The post-conviction court denied the petition, and the petitioner timely appealed. The sole issue for review on appeal is whether the post-conviction court erred in finding that the plea was knowingly and voluntarily entered. Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

David Christensen, Memphis, Tennessee, for the appellant, Kenneth Williams.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; William L. Gibbons, District Attorney General; and Rachel Newton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual Background**

In April 2004, a Shelby County Grand Jury returned an indictment charging the petitioner, who was seventeen years old at the time of the offense, with first degree murder. The case was transferred to criminal court. On May 16, 2005, the date the case was set for trial, the petitioner pled guilty to second degree murder in exchange for a thirty-year sentence as a violent offender. Subsequently, he filed a pro se petition for post-conviction relief and was appointed counsel who amended the petition three times.

The transcript reflects that prior to entry of the guilty plea, the State advised the trial court of the terms of the plea agreement, including the requirement that the appellant was required to serve one hundred percent of the sentence in confinement. When the trial court asked the petitioner if he understood his rights, the petitioner responded that he was not aware that he would be required to serve one hundred percent and that he would "rather go to trial."

The petitioner's attorney then questioned the petitioner. The petitioner said that he understood that the plea agreement was for a thirty-year sentence and that he would not be eligible for parole. However, he understood that he could earn credits for good behavior and could "flatten" his sentence after serving only eighty-five percent. He reiterated his desire for a jury trial. The court advised the petitioner that if he were convicted of first degree murder, he would be sentenced to life in prison and would not be eligible for parole for fifty-two years. The petitioner confirmed that he wanted a jury trial. The court said it would accommodate the petitioner and called in the jury. Before the jury could be seated, the petitioner interrupted and said that he wanted to accept the plea agreement.

The trial court then questioned the petitioner extensively to ensure that the petitioner understood his rights. The court began its questioning with the following:

> Mr. Williams, I'm going to ask you some questions and, again, I want to make sure that you're doing what you want to do. I know you're under some pressure here with the jury out in the hall and the attorney . . . asking you questions, but I want to make sure this is what you want to do. Okay? Because ultimately only you can decide to plead guilty. It's your decision[;] you're in control. Do you understand that?

The petitioner testified that he understood the terms of the plea agreement, his right to a jury trial, his right to plead not guilty, and his right to confront and cross-examine witnesses against him. He also said that he understood his right not to testify at trial, his right to appeal any conviction resulting from a trial, and his right to counsel at trial and on appeal. The petitioner testified that he was freely and voluntarily pleading guilty because he was guilty and that nobody was forcing him to plead guilty.

The petitioner was further questioned by his attorney before the trial court accepted his plea. He acknowledged that he and his attorney had discussed trial preparation and strategy. He said that he understood that if the case went to trial, the jury could find him guilty of first degree murder and sentence him to life. He also understood that a jury could find him not guilty or guilty of a lesser included offense. He said that he was satisfied with his attorney's representation and that he was not pleading guilty because he thought he was unprepared for trial. Although he acknowledged that he had discussed the plea agreement with his older brother, he denied that his brother had pressured him to accept it. The petitioner testified that he was accepting the agreement because he did not want to risk getting a life sentence.

At the post-conviction hearing, the petitioner said that his testimony at the guilty plea hearing was untrue. He said that he did not understand the plea agreement and that his brother coerced him into pleading guilty. At the time of the plea, he understood that the sentence for second degree murder was thirty years, but he later learned that the sentencing range was fifteen to twenty-five years for a standard Range I offender. He said he was confused when a jury did not get picked after he had requested one, and he felt like the court was not listening to him.

Arrel Williams, the petitioner's brother, testified that he was the petitioner's guardian at the time the petitioner was indicted. He said that trial counsel relayed messages back and forth between him and the petitioner on the morning of the guilty plea. He said he initially wanted his brother to take the case to trial, but he became concerned about the possibility of a life sentence and eventually decided that his brother should take the deal. He was in the courtroom when his brother asked for a trial. He made a "grunt noise" to get the petitioner's attention and told him to take the deal.

The petitioner's trial counsel testified about his trial preparations. He said there was no question that the petitioner fired a shot into a crowd of people, killing the victim. The petitioner made a statement admitting that he was in an altercation with a group of people, left the scene with another group of people, returned with a gun, and fired a shot into the crowd. Trial counsel said that the district attorney "classified" the case in the gang unit, and the state refused to make any offer until ten days before trial. The state deviated from its no-offer policy because one of the eyewitnesses to the shooting had died. Counsel said that he and the petitioner had several discussions about the offer and that he was very reluctant and unwilling to tell the petitioner whether to accept it. He was prepared for trial and thought that the petitioner "would maybe have a shot with the jury."

The post-conviction court found that the petitioner properly considered the potential costs and benefits of going to trial and entered a knowing and voluntary guilty plea. In support of its decision, the court cited the extensive plea colloquy and voir dire that preceded the guilty plea. The court found that both the trial court and the petitioner's counsel were willing to go to trial. It also concluded that the proof of "a grunt and reasoned advice" from the petitioner's brother was insufficient to establish coercion in light of the petitioner's testimony to the contrary in the trial court.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence

in the record preponderates against those findings.  Id. at 578.

To pass constitutional muster, a guilty plea must be made voluntarily, understandingly, and knowingly.  Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998) (citing Boykin v. Alabama, 395 U.S. 238, 244, 89 S. Ct. 1709, 1713 (1969)); see also State v. Mackey, 553 S.W.2d 337, 341 (Tenn. 1977).  To determine the voluntariness and intelligence behind a guilty plea, the court must look to various circumstantial factors, i.e.,

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (citation omitted).

Upon our review of the record, we agree with the post-conviction court's assessment.  The transcript of the guilty plea hearing reflects that the court informed the petitioner of his rights and questioned him extensively to ensure that he understood the rights he was waiving by pleading guilty. Both the trial court and trial counsel took precautions to ensure that he understood the plea agreement. Accordingly, we conclude that the petitioner's pleas were knowingly and voluntarily entered.

### III.  Conclusion

Based upon the foregoing, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE

-4-